■ WILLIAM L. LOWER et al., Appellants, v VILLAGE OF WATKINS GLEN, Respondent, et al., Defendant. [794 NYS2d 140]—

Lahtinen, J. Appeal from an order of the Supreme Court (O'Shea, J.), entered June 9, 2004 in Schuyler County, which, inter alia, granted a motion by defendant Village of Watkins Glen for summary judgment dismissing the complaint against it.

On August 30, 1999, plaintiffs entered into a purchase option agreement with defendant Village of Watkins Glen for a 3.4-acre parcel owned by the Village. Plaintiffs paid the Village $500 and

were granted six months in which to purchase the parcel for $125,000. The agreement also allowed for a six-month renewal period upon payment of another $500. The agreement required plaintiffs to develop the property and it was premised upon compliance with certain conditions, including a written plan from a commercial developer, preliminary engineering or architectural plans being in place, the proposed project meeting zoning regulations, demonstration that the developer had the financial resources to complete the project, and a written commitment to complete the project within two years.

Although plaintiffs' efforts to get a hotel developer interested in the property were not successful, they elected to continue the option for the second six-month period. As that second six-month period was coming to an end, plaintiff Charles Kendall appeared before the Village Board in August 2000 and requested that the option agreement be extended. An extension was granted, but the terms of the extension are disputed by the parties. Kendall met with the Village attorney, Connie Miller, who wrote on the bottom of the original agreement: "The option has been extended for another 6 month period, expiring 8/30/01, $500 consideration has been paid." Kendall and the Village Mayor later signed under this handwritten addendum. At a subsequent Village Board meeting, a Board member questioned the consistency and correctness of Miller's handwritten indication of a six-month extension, but with an expiration date in August 2001. Miller then wrote plaintiffs in December 2000 informing them that the handwritten date was incorrect and that the option would expire in February 2001.

However, in February 2001, Kendall attempted to pay $500 for another six-month extension. The payment was refused by the Village. In April 2001, plaintiffs wrote to the Village stating that they were exercising their option to purchase the property and requested a meeting to discuss their plans, which included placing townhouses on the property. When the Village refused to meet with plaintiffs and contracted to sell the property to another developer for $100,000, plaintiffs commenced this action seeking, among other things, specific performance. Following disclosure, the Village moved for summary judgment dismissing the complaint against it and plaintiffs cross-moved for summary judgment. Supreme Court granted the Village's motion, finding both that plaintiffs failed to show they were ready, willing and able to perform under the option agreement and that the handwritten date of August 30, 2001 was a mistake that did not reflect the intentions of the parties. Plaintiffs appeal.

We turn first to plaintiffs' argument that the proof did not es-

tablish as a matter of law that the handwritten date of August 30, 2001 was a mutual mistake. A party seeking to invoke equity to reform a written agreement based upon a purported mistake bears the burden of showing a mutual mistake by clear and convincing evidence (*see Nash v Kornblum*, 12 NY2d 42, 46-47 [1962]; *Lent v Cea*, 209 AD2d 820, 820 [1994], *lv denied* 86 NY2d 703 [1995]; *see also George Backer Mgt. Corp. v Acme Quilting Co.*, 46 NY2d 211, 219-220 [1978]). The Village's proof in support of its motion included examination before trial testimony and affidavits from the Mayor, Board members, the Village Clerk and the Village attorney, who stated that they were present at the August 2000 meeting when an extension was granted and all recalled that it was a single six-month extension. The testimony and affidavit of Kendall, however, indicates otherwise. He recalled requesting and receiving an extension on all the same terms and conditions as the original agreement, including "the option term of six months and renewal term of six months." The handwritten terms added by the Village attorney and signed by Kendall and the Mayor are not clear since the reference to a six-month extension supports the Village's position while the reference to an August 2001 expiration date supports plaintiffs' position. In light of this ambiguity and the conflicting sworn statements by the parties on the key issue of the nature of the extension granted at the August 2000 Board meeting, this issue was not appropriate for resolution on a summary judgment motion.

Next, we address whether plaintiffs made a sufficient showing of being ready, willing and able to perform the contract to avoid summary judgment. "A plaintiff seeking to maintain an action for specific performance or for damages for nonperformance of a contract must demonstrate that a tender of his or her own performance was made, unless tender was waived or the necessity for such a tender was obviated by acts of the other party amounting to an anticipatory breach of the contract or establishing that such party would be unable to perform" (*Madison Invs. v Cohoes Assoc.*, 176 AD2d 1021, 1021-1022 [1991], *lv dismissed* 79 NY2d 1040 [1992] [citations omitted]; *see Morey v Sings*, 174 AD2d 870, 873 [1991]). In the event that plaintiffs prevail on their assertion that the agreement was extended until August 2001, then there would be an issue as to whether there was an anticipatory breach by the Village in February 2001. Moreover, plaintiffs contend that, when they attempted to exercise their option in April 2001, they were prepared to meet all conditions within the time frame permitted by the agreement. Evidence submitted in such regard by plaintiffs included, among other things, detailed proof regarding plaintiff William

L. Lower's financial capability to complete the proposed project (*compare Internet Homes, Inc. v Vitulli*, 8 AD3d 438, 439 [2004] [failure to show financial capability fatal to action for specific performance]), preliminary drawings prepared by an engineer, and Kendall's affidavit describing the project, which he avers would have complied with zoning regulations and could have been completed within two years. This evidence raised triable issues.

Finally, we note that the Village's argument that its attorney and the Mayor lacked authority to prepare and sign an extension through August 2001 is premised upon the contention that the Board authorized only an extension to February 2001. The length of the extension by the Board is, however, an unresolved factual issue.

Crew III, J.P., Mugglin, Rose and Kane, JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as granted the motion of defendant Village of Watkins Glen for summary judgment; said motion denied; and, as so modified, affirmed.